## UNITED STATES DISTRICT COURT OF MARYLAND

**KIRK E. WEBSTER, SR.**

                              }

**43184 GATWICK SQ.**                    }

**ASHBURN, VA 20147**              }

**703-587-5341**                       }

                              }

**Plaintiff**                          }

**v.**                                 }      **JURY TRIAL DEMANDED**

                              }      **DATE: Tuesday, 09 December 2025**

**Pete Hegseth,**                   }

**SECRETARY OF DEFENSE,**       }      LKG 2 5 CV 0 4 0 3 1

                              }

**1000 DEFENSE PENTAGON**      }

**WASHINGTON DC 20301-1000**    }

**Defendant.**

## COMPLAINT

Comes now Plaintiff Kirk E. Webster, Sr. proceeding pro se, and sues Defendant Pete Hegseth in his capacity as the Secretary of Defense, of the Department of Defense and Lieutenant General Michele H. Bredenkamp, in her capacity as the Director, of the National Geospatial-Intelligence Agency (NGA), and for Plaintiff's Complaint that states as follows:

1/27

This is an action by Kirk E. Webster, Sr., a former employee of the National Geospatial-Intelligence Agency (NGA) and its predecessor agencies National Imagery and Mapping Agency (NIMA); and Defense Mapping Agency (DMA), who subjected Plaintiff to disparate treatment, a hostile work environment, and unlawful retaliation after I engaged in protected EEO activity.

---

Plaintiff's intent is to litigate that the National Geospatial-Intelligence Agency's (NGA's) Associate General Counsel, Jack W. Rickert, along with agents or employees of the agency engaged in unlawful discrimination against me on the basis of race (Black), retaliation for my prior Equal Employment Opportunity (EEO) activity, and handicap (mental and physical) arising from the stroke Plaintiff suffered at NGA's Bethesda, Maryland headquarters on November 17, 2010, and breach of the 2012 settlement agreement as a result of discrimination and or retaliation; and coercion.

At the time of my stroke, Plaintiff's request for $300,000.00 in relief was pending before the EEOC in Case No. 0120102276 **(Exhibit T)**, which I discovered on 12/5/2025 was recently uploaded through the EEOC portal to my online account dated, 5/25/2015, because the EEOC knowingly never sent me a copy of their September 20, 2011 decision after my clearance was revoked. Therefore, administrative remedies were <u>NOT</u> exhausted until the recent EEOC September 11, 2025 Decision **(Exhibit U).**

I assert that Mr. Rickert's actions were taken, in part, to avoid paying Plaintiff the relief sought and that he knowingly and intentionally interfered with and violated my entitlements under the Federal Employees' Compensation Act (FECA); Title VII; and 29 U.S.C. § 791 (Section 501 of the Rehabilitation Act).

Moreover, NGA's Equal Employment Opportunity Office further refused to process my EEO complaint pursuant to EEOC regulations, in violation of my rights under Title VII of the Civil Rights Act, because Mr. Rickert was aware that the documented evidence demonstrates his discriminatory conduct. The attached exhibits support and substantiate these claims.

Additionally, the Agency's refusal to honor an Alexandria, VA bankruptcy Court-approved Chapter 13 bankruptcy forced Plaintiff into a Chapter 7 bankruptcy. This, in turn, compelled me to appear before NGA's Personnel Security Advisory Board (PSAB), where a panel of adjudicators - fully aware of my EEO activity – retaliated against Plaintiff by permanently revoking my security clearance to effectuate my removal from the position of Band IV Lead Cartographic Analyst.

Plaintiff seeks relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000 et seq., as amended by the Civil Rights Act of 1991, included but not limited to declaratory, injunctive and equitable relief and compensatory damages, and litigation expenses.

## II. JURISDICTION AND VENUE

1.     This arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000 et seq., This Jurisdiction is founded on 42 U.S.C. Section 2000, et seq., 28 U.S.C. Sections 1331 and 1343(3) and (4).  The Court has jurisdiction to grant declaratory and further relief pursuant to 28 U.S.C. Sections 2201 and 2202.

2.     Venue is proper in this district Court pursuant to 28 U.S.C. § 1391(b) because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district. During the period relevant to this action, Defendant operated within this district, and the conduct giving rise to Plaintiff's claims - including the stroke Plaintiff suffered and the

3/27

initiation of the discriminatory acts took place at the National Geospatial-Intelligence Agency's Bethesda, Maryland facility.

### III. PARTIES

3.      Plaintiff, Kirk E. Webster, Sr. (hereafter "Plaintiff," me, my, or I), a Black African American male, is a citizen of the United States and a resident of the Commonwealth of Virginia. Plaintiff, at all times material, was employed by Defendant as a Lead Cartographic Analyst. Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, in that I engaged in protected EEO activity and opposed practices of my employer that I reasonably believed were in violation of Title VII.

4.      Defendant Pete Hegseth (hereafter "Defendant," or "DOD") is the Secretary of Defense and Defendant Lieutenant General Michele Bredenkamp (hereafter "Defendant," or "NGA") is currently the Director of NGA - NGA is an agency within the Department of Defense. Lieutenant General Michele Bredenkamp's predecessor was Vice Admiral Frank Whitworth. At all times material, Defendant Hegseth and Bredenkamp were "employers" within the meaning of 42 U.S.C. Section 2000e(b). As to Plaintiff's Title VII claims, Defendant Hegseth is sued in his official capacity as Secretary of Defense and Defendant Bredenkamp is sued in her capacity as the Director of the NGA.

5.      Plaintiff's complaint concerns the actions of officials,  namely NGA's former Director James Clapper, Jr. who condoned the discrimination I was subjected to, NGA's Assistant General Counsel Jack W. Rickert who was the main Responsible Management Officials (RMO), NGA's Assistant General Counsel Susan McCoy, Plaintiff's former Branch Chief Mr. Mike Owens; Plaintiff's former Division Chief Mr. Fred Bockelman; Defense Intelligence Senior Executives Mr. Joe Steele, Mr. Jack Fahey, and Mr. Jack Hild; former Human Resources

4/27

Representative Ms. Sandy Renfrow; Ms. Michele Thompson, Security Specialist Brenda Sanders, EEO Counselor Ms. Patsy Coleman and other Equal Employment Opportunity (EEO) officials as agents and/or employees of the NGA.

## IV. FACTUAL BACKGROUND

On 7 December 2023, Plaintiff filed the following informal EEO complaint: "Dear Ms. Patricia Baker-Simon: I am filing an Equal Employment Opportunity complaint alleging race (Black)– based discrimination and reprisal. I suffered a stroke at the National Geospatial-Intelligence Agency (NGA) Headquarters in Bethesda, Maryland, and was not informed of my benefits and rights under the Federal Employees' Compensation Act (FECA). I did not become aware of these rights until October 31, 2023.

While at work, my wife - a federal employee - was injured on October 26, 2023. By October 31, 2023, a Department of the Navy Supervisory Human Resource Specialist contacted both my wife and me after being notified of her accident by her supervisor **(Exhibit A)**.

6.      In accordance with EEOC Regulation 29 C.F.R. § 1614.105(a)(2), I am filing this informal EEO complaint within 45 days of when I knew or should have known that discrimination occurred (October 31, 2023). I suffered a stroke at NGA on November 10, 2010. NGA management and Human Resources officials intentionally failed to inform me of my entitlement to FECA benefits in order to revoke my security clearance, place me on indefinite suspension, remove me from my position as Lead Cartographic Analyst, and force me into voluntary retirement.

7.    The responsible NGA officials include Branch Chief Mike Owens; Division Chief Fred Bockelman; Defense Intelligence Senior Executives Joe Steele and Jack Fahey; HR Representative Sandy Renfrow; and Assistant General Counsel Jack W. Rickert.

8.    Plaintiff also included Assistant General Counsel Rickert and U.S. Attorney Michael Wilson in my correspondence **(See attached documents as Exhibit A)**.

9.    NGA West Equal Employment Opportunity (EEO) Director, Patsy Coleman, was assigned to process Plaintiff's informal EEO complaint and engaged in obstructionist tactics to avoid processing Plaintiff's Informal Complaint pursuant to EEOC regulations.

10.    Plaintiff is alleging that Ms. Coleman was assigned by NGA to obstruct the processing of my informal EEO complaint because Jack Rickert knows he is guilty of discriminating against Plaintiff according to race (Black), handicap (mental and physical) for breaching the 2012 settlement agreement due to coercion - when he and his cohorts intentionally withheld my entitlement to FECA benefits, to intentionally create hardship for Plaintiff, my wife, and minor dependent children **(see Exhibit B, Rickert's letter to Harper)**.

11.    Withholding these valuable benefits factored in Plaintiff filing for bankruptcy and this is the reason NGA has stated to the Courts on several occasions was why they revoked my security clearance.

12.    Ms. Patsy Coleman's first action to prevent Plaintiff from further amending my informal complaint was when she stated, *"only matters raised in pre-complaint processing may be alleged in a subsequent formal complaint"* **(Exhibit C, page 1 of 2)**.  This was stated to prevent Plaintiff from amending my informal EEO complaint to include additional allegations of hostile work environment, harassment, and discrimination according to handicap (mental and physical) due to the stroke I had at the NIMA/ NGA Bethesda, MD Headquarters (HQ). After stating that the

*"intake documents [are] necessary to begin the intake and counseling process,"* she proceeded to process my informal EEO complaint without the completion of these documents for the specific intent to shield Mr. Rickert from being charged with discrimination **(Exhibit C)**.

13. Plaintiff lost faith in Ms. Coleman's ability to be impartial in processing my informal EEO complaint when she emailed me on 12/22/2023 stating the following:

14. *"I am in receipt of your informal complaint and have attempted to reach you via telephone at the number listed in your signature block on your email. After not hearing from you, I sent you the email below. If I do not hear from you by COB today,* **I will conduct the limited inquiry utilizing the information you provided in your email***"* **(Exhibit D)**. I had not completed the intake documents that she had previously stated, are "necessary to begin the intake and counseling process."

15. Plaintiff forwarded an email to Ms. Coleman stating, *"As of November 15, 2023, I Amended my Court complaint to include allegations of discrimination and violation of my FECA rights and benefits. Since I cannot pursue these claims in two different forums, my first and main choice is with the U.S. District Court of Maryland, and it will be unless the Court says otherwise"* **(Exhibit E)**.

16. I said this because Ms. Coleman showed partiality towards Mr. Rickert by attempting to get me to acknowledge with my initials on *"Rights and Responsibilities Of Individuals During The Discrimination Complaint Process"* form that *"Only matters raised in pre-complaint processing may be alleged in a subsequent formal complaint."*

17. To further substantiate my suspicions that she was on a mission to keep Plaintiff from amending my complaint, Ms. Coleman, without concluding the informal complaint with a final interview or the completion of intake documents, pursuant to EEOC OFO regulations **(Exhibit**

**P)**, contrary to EEOC regulations issued Plaintiff a Notice of Right to File (NRTF) by FEDEX, but when Plaintiff refused to accept it, she sent it by U.S. certified mail; when Plaintiff refused to accept this, she submitted it by DoD SAFE, which I refused to accept because Ms. Coleman's intent was to not process my complaint pursuant to EEOC regulations, but yet to get Jack Rickert off the hook as the Responsible Management Official **(RMO)**, and I am sure U.S. Attorney Wilson and NGA's EEO Director, Ms. Teresa K. Hollingsworth, were at all times aware of what Ms. Patsy Coleman was doing since they were copied on the email to ensure NGA processed this complaint according to the law.

18.    Ms. Coleman's desire to force Plaintiff's informal complaint to finality on the guise that it could not be amended beyond its initial drafting, was to get Mr. Rickert off the hook as the RMO. This is something that Mr. Rickert, and U.S. Attorney Wilson must have been aware of because they were copied on the 12/7/2023 email.

19.    Plaintiff's EEO complaint is not subject to res judicata because the formal complaint was never fully processed and administrative remedies were pending, but never exhausted when Plaintiff's complaint was transferred to the Eastern District of Virginia (ESDV) District Court.

20.    Mr. Rickert did not want Plaintiff's informal complaint to include allegations of discrimination according to handicap (mental and physical) because Mr. Rickert is aware that Plaintiff has information that proves I was treated disparately from my White former supervisor, Ms. Boyd, who was disciplined by Rickert and NGA senior management for her sworn testimony that identified NGA senior managers who coerced her into discriminating against Plaintiff **(Exhibit G, Boyd Testimony pp. 131-135; Exhibit J, pp. 17/22) – "Privacy Act Protective Order" was to hide information from the public that would reflect unfavorable on Rickert and NGA**.

21.    Rickert sought to make Plaintiff the scapegoat for what they did to Ms. Boyd to spare NGA's senior management like **John "Jack" Hild, Sharon Dunkle** from being charged with allegations of disclosure discrimination and retaliation **(Exhibit S, p. 194)**.

22.    Mr. Rickert's attached affidavit **(Exhibit H pp. 3/11 – 5/11)** serves as compelling evidence that he and NGA's Human Development (HD – NGA's Human Resources Department) in retaliation, intentionally subjected Plaintiff to disparate treatment in comparison to how NGA's Human Development aided Ms. Theresa Boyd after her bipolar episode that caused her to burn the NIMA ladies restroom caused by actions that I believe were taken by Jack Rickert and NIMA's/NGA's Senior Management, as explained below in detail and revealing why the agency has taken drastic measures to prevent Plaintiff from filing this complaint against Mr. Rickert as the Responsible Management Official (RMO):

23.    Rickert stated *"The agency, however permitted Ms. Boyd to resign and assisted her in applying for disability retirement from OPM which was granted by OPM 4 months later."* Yet, agency Assistant General Counsel Jack Rickert, agency Human Development (HD), and agency Senior Management, conspired to withhold Plaintiff's entitlement to FECA benefits from him, in retaliation.

**24.**    *"The second settlement agreement between the parties occurred in October 2001. A large percentage of the issues in that complaint were made by Appellant against an agency supervisor named Theresa Boyd. Ms. Boyd suffered from Bipolar Disorder. On or about December 13, 2000, Ms. Boyd entered the manic stage of her depressive disorder. While at work in the agency's Bethesda headquarters building, Ms. Boyd started a fire in the womens' restroom and locker room. She then began screaming "burn baby burn" as employees fled the building*

*after the fire alarm sounded and the thick smoke spread through the first floor of the building. The Police subsequently arrested Ms. Boyd arson and destruction of property. The Maryland District Court, however, declined to sentence her to prison, because of her disabling condition. She was instead placed on probation with the provision that she take her prescribed medicine and stay away from the agency. The agency proposed to remove Ms. Boyd for the arson which caused more than $10,000.00 of damage to the facility. The agency, however permitted Ms. Boyd to resign and assisted her in applying for disability retirement from OPM which was granted by OPM 4 months later.*

**25.** *After her disability retirement, during the summer of 2001, I interviewed Ms. Boyd in preparation for Appellant's discrimination complaint and its many claims. During this witness interview, she informed me that her Psychologist had recommended against her cooperating and testifying in Appellant's cases due to the emotional stress. She said that*

**26.** *she was willing to try to assist the agency because of its decency in dealing with her crime, and because she believed that Appellant was "gaming the system" and making false claims. During the witness interview, she confided in me that having Appellant make personal attacks in his EEO complaints against her may have been one of the contributing factors in her setting the fires, due to the emotional strain. Shortly after this interview, Ms. Boyd informed me that the EEO process was too stressful for her and that she would follow her doctor's advice not to testify. It wasn't long after this phone conversation, I was distressed to learn that **Ms. Boyd had jumped in front of a truck on a busy highway in Northern Virginia and had died instantly** (Lie – see Exhibit X – p. 1).*

27.    *Without its RMO, the agency had no witness to rebut many of Appellant's claims. The agency had failed to document discussions among supervisors that led to several employees, including the Appellant, having their appraisals lowered below that initially proposed by the first level supervisor Since the agency had not created any notes or other documents of these discussions, the several supervisors that I interviewed could provide only general reasons why they recommended that Appellant's appraisal be lowered. The one consistent statement made by all of the supervisors I interviewed is that Ms. Boyd "overrated" all her employees." For these reasons, in addition to the agency's general strategy or philosophy of attempting to resolve discrimination cases, the second settlement agreement was reached between the agency and the Appellant. As with the earlier settlement, neither management nor I believed that the agency had discriminated against the Appellant"* **(Exhibit I, Nomia Bryant's Testimony proves this Rickert statement is an outright lie).**

**28.**    Mr. Rickert's sworn declaration is littered with lies and serves as evidence to why Plaintiff was subjected to racial discrimination and why the 2012 settlement is breached as a result of discrimination and retaliation.

29.    Appellant's former supervisors, Theresa Boyd and Nomia Bryant's sworn testimony serves as irrefutable proof that Rickert lied when he stated, *"Without its RMO, the agency had no witness to rebut many of Appellant's claims. The agency had failed to document discussions among supervisors that led to several employees, including the Appellant"* **(see Exhibit I pp. 131-136 and Exhibit J, pp. 98-100).**

30.    Moreover, Ms. Boyd was disciplined by NGA management for identifying in her sworn declaration the senior NGA management officials who compelled her to discriminate against me **(Exhibit J, p. 35)**.

31.    In retaliation for NIMA's/NGA's revocation of her security clearance and removal **(Exhibit K, p. 2)** Ms. Boyd burned the ladies restrooms causing more than $10,000.00 of damages to the NIMA/NGA. See Rickert's affidavit in which this incessant liar tries to make me the scapegoat for what he and NGA's Sr. Management – **Director James Clapper, Jr.; Senior Executive Jack Hild, and others** did to Ms. Boyd.

32.    Rickert's statement that he "was sad to hear that she jump in front of a truck and died instantly" was another blatant lie.  The Leesburg Today gave a more accurate description of how Ms. Boyd was killed after NIMA/NGA revoked her clearance **(Exhibit X – p. 1)**, removed from her employment and their actions caused her to lose her home and forced her and her mother to have to leave to stay with her brother in Florida **(See exhibit J, pp. 20/21 – 22/22)**.

33.    The circumstances surrounding Ms. Boyd is why NGA's EEO office has been directed not to process my EEO complaint of discrimination according to handicap (mental and physical) including harassment and hostile work environment. NGA's Assistant General Counsel Jack W. Rickert is the main discriminator in my EEO complaint and is not above the law.

34.    Plaintiff is alleging breach of the 2012 settlement agreement as a result of discrimination and or retaliation **(Exhibit R – pursuant to Report & Recommendation)**. NGA knows this, and this is why the agency's EEO office has gone to great lengths to not process this complaint to include Plaintiff's allegations of discrimination according to race (Black) handicap (mental and physical); harassment and hostile work environment.

35.     Additionally, I attempted to resume the processing of my EEO complaint by filing March 26, 2025 **(Exhibit L)**.

36.     Rickert and his NGA's HR cohorts intentionally withheld informing me of my entitlements to FECA benefits to coerce me into settling my EEO claims. The Harper letter serves as evidence that Mr. Rickert was aware of the hardship that he and his cohorts caused Plaintiff and my family when they intentionally withheld informing me of my entitlement to FECA benefits in the immediate aftermath of the stroke I had while working in the NIMA/NGA HQ in Bethesda, MD.

37.     This is why the NGA's EEO officials have engaged in obstructionist tactics to prevent me from amending my EEO complaint to include discrimination according to handicap (Mental and physical) and to shield Rickert and his cohorts from being found guilty of discriminating against me; in so doing they have intentionally engaged in malfeasance while violating my Title VII Civil Rights.

38.     In retaliation for my prior EEO activity, Mr. Rickert and his HR cohorts, knowing I had a stroke and cognizant of the medical bills, copayments, and emotional distress that came along with it, kept quiet about my entitlement to FECA benefits that Congress passed into law to alleviate this hardship on a family. All the while knowing that I had two minor children to provide for, Rickert lied stating:

39.     "Dear Mr. Harper: I am writing on behalf of the National Geospatial-Intelligence Agency (NGA or the Agency), a component of the Department of Defense (DoD or the Department), to respectfully request that the Defense Finance and Accounting Service (DFAS) cancel Mr. Kirk E. Webster's debt of $7,449.18, referenced in your letter dated July 21, 2012. Mr. Webster is a former NGA employee who retired under a VERAVSIP effective June 30, 2012.

40.     Unfortunately, due to circumstances unforeseen by the Agency, Mr. Webster incurred significant personal debt, became unable to make payments on large portions of that debt, and was subsequently forced to file for bankruptcy. Because all NGA employees must maintain Top Secret / Sensitive Compartmented Information (TS/SCI) security clearances, NGA was required under DoD and DCI regulations to revoke his clearance and access. His financial condition rendered him ineligible to retain the required clearance level. Consequently, Mr. Webster was no longer eligible for continued employment and elected to retire rather than face involuntary separation.

41.     Furthermore, Mr. Webster was never informed that the Agency or the Department was making health insurance payments on his behalf. His wife, also a DoD employee, could have enrolled him under her plan had he been so informed. This lack of notice caused him to lose the opportunity to obtain health insurance through another available source, resulting in undue hardship through no fault of his own.

42.     Additionally, NGA and Mr. Webster had been in litigation for approximately fourteen years concerning his claims of discrimination prior to his retirement. Because his separation was due solely to indebtedness—and not misconduct—NGA entered into a comprehensive settlement agreement with Mr. Webster on June 1, 2012, resolving all known and unknown claims related to his employment. Since the debt of $7,449.18 arose from his employment, NGA respectfully urges DFAS to cancel the debt in order to ensure the Department's compliance with that settlement agreement.

43.     Finally, given the prolonged economic downturn and the resulting hardships nationwide, Mr. Webster's situation warrants equitable consideration.

14

27

44. His inability to maintain a security clearance placed him in a non-pay status pending separation, forcing early retirement at age 51 **as his only viable means of retaining income.** Despite active efforts, he remains unemployed, **resulting in severe financial strain on his family**.

45. For these reasons, NGA respectfully requests that DFAS cancel Mr. Webster's debt in full" **(Exhibit R – Harper Letter)**.

46. In addition to the rejection of an approved Chapter 13 bankruptcy that many DoD employees with security clearances are having paid to bankruptcy Courts through DFAS (see exhibit O), Rickert knew that the agency's HR officials and Plaintiff's management's intentional reluctance to inform me of my entitlement to FECA benefits, in the immediate aftermath of my stroke, is what contributed to deliberate hardship on Plaintiff and my family.

47. NGA has repeatedly stated to the Courts that my clearance was revoked because Plaintiff filed bankruptcy, but NGA forced Plaintiff into filing for Chapter 7 bankruptcy because NGA security lied that and stated, **"To date no paperwork has been provided as proof the Chapter 13 bankruptcy was filled with or has been accepted by the Court" (Exhibit N, p. 1, 3a).** But documented paperwork was provided to Mr. Ray Hennessey of NGA's Security office. NGA's Security stated this bold lie because there was no oversight to challenge their response – what they said was final. NGA security stated this lie to force the revocation of my security clearance because many NGA employees with security clearances had chapter 13 bankruptcies being paid to the bankruptcy Court's trustee through DFAS payroll to ensure their debt was being paid, and **Exhibit O, which surfaced after the longest U.S. federal government shutdown just ended** serves as irrefutable proof. If security clearances are revoked for filing bankruptcy then there

should be no Chapter 13 bankruptcies being paid through DFAS **(See Exhibits O or W)** – the fact is this was a lie perpetrated by NGA just to permanently revoke my clearance.

48.     The revocation of my clearance was tied to disclosure discrimination and because of this, I am requesting that the Court awards Plaintiff all backpay and every monetary benefit lost as a result of my clearance being revoked and position taken away, including interest at the federal funds rate.

49.     NGA concocted their stated reason to reject an approved Chapter 13 just to force Plaintiff to go before the NGA Personnel Security Advisory Board because it was Rickert and senior management's ultimate goal to permanently revoke my security clearance.

**50.**     Additionally, Rickert and NGA senior management out of guilt for what they did to Ms. Boyd, wanted Plaintiff to suffer the same fate they imposed on Ms. Boyd to save their careers. Rickert was hell bent on making Plaintiff lose my home and my job because they were looking for someone to blamed for what he did to Ms. Boyd, to get the agency senior managers he answered to off the hook.

51.     For example. Plaintiff initially filed a Chapter 13 Bankruptcy that was approved by the Bankruptcy Court in Alexandria, VA **(Exhibit M).**

52.     On June 21, 2011, Plaintiff provided all pertinent documentation of a Court approved Chapter 13 bankruptcy case No. 11-15299, with name of Trustee, Thomas P. Gorman, to my assigned NGA Security Specialist Ray Henessey certifying the Court's approval **(Exhibit M).**  I contacted Mr. Henessey to ensure he received the necessary documents and he confirmed by leaving Plaintiff a voicemail that I have to this day.

53.    In their 09 September 2011 response, NGA's Security lied to intentionally refuse my approved, through the U.S. Eastern District of Virginia Court Bankruptcy Court, Chapter 13 bankruptcy - to force Plaintiff to go before the NGA Personnel Security Advisory Board PSAB). NGA's management had already predetermined from the day Plaintiff's clearance was suspended they would revoke and later permanently revoke it, in retaliation for my prior EEO activity that resulted in a promotion to Band VI Lead Cartographic Analyst, with back pay **(See Exhibit N, P. 1, 3a).**

54.    NGA's security rejected my Chapter 13 bankruptcy because it would have caused Rickert and agency management to fall short of their initial goal, which was to take away promotion that resulted from prior EEO activity settlement.

55.    **Exhibit O**, "Leave and Earning Statement (LES) deductions related to the most recent government shutdown, serves as irrefutable proof that Defense agencies like NGA are paying Chapter 13 plan  payments through the Defense Finance and Accounting System Payroll for their employees who hold a security clearance; this hasn't just started but has been going on for decades.  Plaintiff's was intentionally rejected out of retaliation because of my prior EEO activity.

56.    A Chapter 13 bankruptcy is a legal process approved through the Court that confirms a debt is being paid. As evidence of this, The Defense Finance and Accounting (DFAS) office lists "Chapter 13 Payments" among the deductions that will go out after employee payments resumed post federal government shutdown

57.    **The Present is the key to the past** - These Chapter 13 payments are for Defense employees who carry a security clearance to have their bankruptcy payments to go directly from DFAS payroll to the bank trustee. Defense Employees are not just filing Chapter 13

bankruptcies; this has been going on for decades.  When NGA Security rejected my Chapter 13 in retaliation for my prior EEO activity, many of their employees were paying Chapter 13 payments through DFAS payroll **(Exhibit O)**.

58.    Rickert had NGA security reject my Chapter 13 in retaliation for my prior EEO activity and to impose upon me the same fate suffered when they rejected Ms. Boyd's security clearance. Therefore, not only was I unlawfully discriminated against, but Rickert and NGA management me the scapegoat for the evil they did to a woman who was doing what NGA senior manager coerced her to do – she was punished for identifying my senior management discriminators by name.

59.    This serves as compelling evidence as to why NGA's EEO Counselor Patsy Coleman rushed to issue a Notice of Right to File (NRTF) without signed "intake documents" or **concluding my 12/7/2023 informal EEO complaint with a "final interview"** – it was done before Plaintiff could include discrimination according to handicap (mental and physical), harassment, and hostile an amendment.

**60.**    For example, the EEOC stated in their 16 September 2025 response **(Exhibit P - footnote)** that "we remind the Agency of its obligation to process informal EEO complaints to conclude with a final interview and issuance of a notice of a right to file **(NRTF)** a discrimination complaint, in accordance to 29 C.F.R 1614" but Ms. Patsy Coleman intentionally never counseled me prior to desperately expediting Notices of Right To File by FEDEX, U.S. Certified Mail, DoD Safe because she wanted the last word in defining Plaintiff's claims.

**61. <u>EEOC APPEAL No. 2025003631 (March 26, 2025 EEO Complaint)</u>**

62. Plaintiff's lack of confidence in Ms. Coleman being impartial, led me to send her an email stating that I would wait until the Court makes a decision before moving forward with the 12/7/2023 informal EEO complaint she was assigned to.

63. After the Eastern District of Virginia Court's decision for was rendered by Judge Nachmanoff, I attempted to continue processing my informal EEO complaint and submitted it to several NGA EEO officials on **March/13/2025 (Exhibit L)**.

64. After more than 30 days of no NGA EEO official responding to my informal EEO Complaint, I stated by email that **"this is now a formal EEO complaint,"** per guidance I got years ago from former Baltimore Field office EEOC Administrative Judge David Norken.

65. In a subsequent email dated 5/13/2025, Plaintiff stated, "Due to the Trump Administration's recent DEI removals, I am resubmitting this discrimination complaint to ensure it is received by the NGA EEO office  and processed in accordance to EEOC regulations" **(Exhibit V).**

66. Plaintiff informed the EEOC OFO about NGA's reluctance to process my informal EEO complaint that was filed on 3/26/2025.  Shortly thereafter, the agency began processing my informal EEO complaint via email.  After Plaintiff responded to agency's EEO official(s), by email, with the information requested to process my informal EEO complaint, the following occurred:

**67.** On June 10, 2025, Appellant received a **"Final: EEO Complaint"** email from the agency's EEO office that essentially dismissed my EEO complaint <u>without ever assigning a case number</u> to it. Moreover the June 10, 2025 email from EEO Officer Tiffany Price, SHRM-CP was littered with lies that were obviously stated to improperly dismiss this meritorious EEO complaint.

Plaintiff appealed to the Equal Employment Opportunity Commission's Office of Federal Operations - "OFO" **(Exhibit Q)**.

**68.** On September 16 2025, the EEOC responded, *"the Commission's regulation provides that a complainant may file an appeal once an agency issues a final action or dismissal of a complaint. 29 C.F.R § 1614.401(a). In this case, there is no Agency final action or dismissal."*

**69.** There is no agency final action or dismissal because the agency refuses to process Plaintiff's complaint that alleges Mr. Rickert as the Responsible management official when discrimination according to handicap (mental & physical), harassment and hostile work environment are alleged.

**70.** When Ms. Coleman tried to hypersonically process the informal filed on 12/7/2023. She did so because discrimination according to handicap (mental & physical), harassment and hostile work environment were not initially included and she expedited processing to prevent Plaintiff from amending it.

**71.** The handwriting is on the wall, the agency knows that Mr. Rickert and his NGA cohorts have severely discriminated against Plaintiff and are doing their darndest to avoid processing a meritorious EEO complaint in which Rickert is definitely guilty of discriminating against Plaintiff.

**72.** For NGA's willful failure to not process Plaintiff's EEO complaints is in violation of my Title VII Civil Rights. Plaintiff is asking the Court for a sua sponte decision in Plaintiff's favor. This factored in Plaintiff filing this appeal with the OFO **(Exhibit Q, EEOC Appeal No. 2025003631)**.

**73.** *In closing EEOC Appeal No. 2025003631 the OFO stated, "the Agency informed the Commission of your civil action filed with United States District Court for the Eastern District of*

*Virginia, which issued an order on September 27, 2024, to dismiss your claims with prejudice for case number 1:24-cv-00636. "You included an alleged violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000 et seq. When the Agency denied FECA benefits. The order noted that you had not exhausted your administrative remedies for Title VII claim, but that even if you had, the claims were barred by a prior settlement agreement and previous district court decisions."* **(Exhibit P)**

**74.** In addition, the EEOC stated in a footnote on page 1, *"We remind the Agency of its obligation to process informal EEO complaints to conclude with a final interview and the issuance of a notice to right to file a discrimination complaint, in accordance with 29 C.F.R § 1614."* NGA has never processed the informal complaints reference in this civil action by *"conclud[ing] with a final interview and the issuance of a notice to right to file a discrimination complaint, in accordance with 29 C.F.R. § 1614."*

**75.** Plaintiff pushed back on the EEOC's decision by stating that the settlement agreement did not state anything about waiving my entitlements to FECA benefits because entitlement to FECA benefits is not waivable and Mr. Rickert knows this.

**76.** Plaintiff's informal and formal EEO complaints alleging discrimination according to race (Black), Handicap (mental and physical), harassment, hostile work environment, and breach of settlement as a result of discrimination/retaliation or coercion were never brought before the U.S. District Court of Maryland or the Eastern District of Virginia Court.

77. Plaintiff is alleging **breach of settlement as a result of discrimination and retaliation consistent with Judge Ivan Davis' Report and Recommendation which states,** *"The only viable claim relating to the 2012 Settlement Agreement would have been breach of the*

21

*agreement as a result of discrimination or retaliation. See Berry, 587 F. Supp. 2d at 726 n.5."* **(Exhibit R, p. 7 of 8)**.

**78.** The EEOC response that *"the Commission's regulation provides that a complainant may file an appeal once an agency issues a final action or dismissal of a complaint. 29 C.F.R. § 1614(a).* **In this case, there is no agency final action or dismissal."**

*79.* The EEOC's response has left Plaintiff no alternative but to file this civil action in district Court within 90 days of the EEOC's decision to close my case, because my Title VII Civil Rights were deliberately violated by NGA's EEO officials who tried to deliberately prevent me from bringing this case against Mr. Rickert - the Responsible Management Official (RMO). Mr. Rickert is not above the law because he is an Assistant General Counsel of NGA – he is a White federal employee knowledgeable of my EEO activity who has intentionally retaliated against me for my prior EEO activity.

**80.** Moreover, the agency's EEO office's repeated attempts to prevent Plaintiff from filing this complaint against Mr. Rickert and NGA's management is telling - they know he is guilty of discrimination, and their actions should confirm it.

**81.** I believe under the guidance of Mr. Rickert, Plaintiff's NGA senior management, supervisors, and Human Development office (HD/Human Resources) were directed to not inform me of my entitlement to FECA benefits. This adversely affected my finances and was instrumental in my filing for the bankruptcy - bankruptcy that NGA has stated to the Court on several occasions was the reason my clearance was revoked. The intentional withholding of Plaintiff's entitlement to FECA benefits must render the 2012 settlement agreement invalid for two reasons:

**82.** A. Breach of settlement due to Coercion: Because it was used to coerce Plaintiff to relinquish my pending EEO claims because the revocation of my clearance led NGA to place me on indefinite suspension without pay for 12 months and take away my healthcare insurance – mind you, I just had a stroke 7 months prior and was under the care of several doctors. Accepting the only retirement presented to me was a matter of life and death, not to mention being married with two minor dependent children, at the time, and Rickert knew it, as stated in the attached letter he wrote to Harper **(Exhibit B)**. Mr. Rickert was aware of the situation that he had calculatedly put me in with the help of his NGA cohorts. The letter he wrote to Harper while knowing I was my entitlement to FECA benefits were being withheld troubling and shows the extent of the hostile environment Plaintiff as in the midst of. This is an agency that has already admitted to discriminating against its Black employees: https://www.ksdk.com/article/news/investigations/federal-agency-admits-to-years-of-racial-discrimination/63-587359549

**83.** B. Breach of settlement as a result of discrimination and retaliation when my statutory entitlements to FECA benefits were intentionally withheld.

**84.** Mr. Rickert had NGA EEO officials obstruct the processing of my Title VII EEO complaint because he is aware that I have compelling evidence of how I have been subjected to disparate treatment and why.

**85.** My former supervisor, Teresa Joan Boyd, who discriminated against me for NGA's management back when NGA was under the name of its predecessor agency National Imagery and Mapping Agency (NIMA), had her security clearance revoked by Mr. Rickert, NIMA's management and Director James Clapper, Jr. while the real Senior Managers – Jack Hild, Eva Collazo De Cruz, Irene Broadley and Sharon Dunkle got away with discriminating against me.

They created a culture that made a predominantly White management feel they could do as they well pleased to their Black subordinates because agency management is provided free legal representation to defend them, at taxpayers' expense.

86. Ms. Boyd was retaliated against by the same people who she stated directed her to discriminate against me and Jack Rickert did their bidding. In her verbatim testimony, Ms. Boyd identified the NIMA/NGA managers who directed her to discriminate against me **(Exhibit G)**.

87. In his affidavit, Mr. Rickert lied and tried to put the resulting adverse effect of what he and NGA's management did to Ms. Boyd on Plaintiff. He went as far as lying and stating that she jumped in front of a truck and died instantly to make it seem my EEO complaint was the cause when it was clear that revoking Ms. Boyd's clearance and taking away her employment is what led her to losing her home which caused her and her mother to make plans to move to Florida to live with her brother. This factored in the accident that led to Ms. Boyd's death **(See Exhibit X, pp. 3-4)**.

88. Rickert's account grossly conflicts with the Leesburg Today's account **(Exhibit X, p. 1)** because he was trying to make me take the blame for what he, NIMA's senior managers and former Director James Clapper did to Ms. Boyd. All of this is why Rickert led a campaign to revoke my security clearance. Despite the fact that I had an approved Chapter 13, it was denied to retaliate against me for my EEO activity surrounding the Theresa Boyd fiasco.

### Request No. 2025003157

89. Additionally, Plaintiff is challenging the EEOC's decision in Request No. 2025003157 - Appeal No. 0120102276 **(Exhibit U)** - all administrative remedies have been exhausted.

**90.** In this Request for Reconsideration, Plaintiff responds to an appeal in which administrative remedies had not been exhausted. Plaintiff never got a chance to respond to the NGA Final Agency Decision (FAD). Plaintiff had requested $300, 000.00 in damages.

**91.** NGA never informed the EEOC that I had a stroke at work because Plaintiff had previously provided documentation to Mr. Rickert from my Board certified Psychologists, Cynthia Jones, PhD. Dr. Jones diagnosed Plaintiff with adjustment disorder with depressed mood well before my stroke and the letters were sent directly from Dr. Jones to Jack Rickert. Mr. Rickert lied stating he was unaware of such letters to hide discrimination. **(see exhibit T).**

**92.** The EEOC never sent a copy of the letter to Plaintiff dated September 20, 2011. Therefore, Plaintiff never informed the EEOC that Rickert and NGA revoked my security clearance after I had a stroke at NGA's HQ in Bethesda, MD. I am confident that this appeal closed (September 20, 2011) 9 days after my clearance was revoked (September 09, 2011) was not a coincidence, but deliberate **(See Exhibit U)** to avoid paying damages of $350,000.00 previously requested by Plaintiff.

**93.** The Commission asks the question – *"we note there is no indication in the record of the duration of harm."* NGA coerced Plaintiff into a settlement agreement so they would not have to provide an *"indication in the record of the duration of harm"* because a request for $350,000.00 in compensatory damages was pending when I had the stroke **(Exhibit U, page 7/23).**

## 94. V. CLAIMS FOR RELIEF

### 95. Count I – Race Discrimination (Title VII)

Plaintiff realleges and incorporates all prior paragraphs. Plaintiff was subjected to disparate treatment, discriminatory actions; and denial of statutory FECA benefits like workers' because of my race (Black).

### 96. Count II – Disability Discrimination (Title VII / Rehabilitation Act)

Plaintiff realleges and incorporates all prior paragraphs. Plaintiff suffered a stroke at NGA and was thereafter subjected to discriminatory treatment – handicap (mental and physical), including denial of FECA benefits, hostile work environment, and intentional acts designed to coerce him into unfavorable settlements.

### 97. Count III – Retaliation (Title VII)

Plaintiff engaged in protected EEO activity. Defendant's officials, including Assistant General Counsel Jack W. Rickert, retaliated against Plaintiff by withholding FECA benefits, obstructing EEO processing, interfering with  Court approved Chapter 13 to deny security clearance, and creating intolerable working conditions.

### 98. Count IV – Hostile Work Environment

Plaintiff endured severe and pervasive conduct, including obstruction of EEO rights, denial of medical benefits, manipulation of security processes, and retaliation linked to his EEO activity and prior settlement.

**99. Count V – Breach of Settlement Agreement as a Result of Discrimination and Retaliation**

Plaintiff realleges and incorporates all prior paragraphs. NGA breached the 2012 Settlement Agreement as a result of discrimination and retaliation, consistent with the standard recognized in Judge Ivan Davis's Report & Recommendation.

## 100. VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court award the following relief:

a. Declaratory judgment that Defendants violated Title VII;

b. Compensatory damages in an amount to be proven at trial;

c. Order requiring NGA to process Plaintiff's EEO claims under 29 C.F.R. § 1614;

d. Injunctive relief prohibiting further retaliation or obstruction of EEO rights;

e. Reasonable attorney's fees and costs;

f. Any additional relief the Court deems just and proper.

## 101. VII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

*Kirk E. Webster, Sr.*

Kirk E. Webster, Sr.                                    Date: December 9, 2025

**Exhibits A-Z (No exhibit F or Y)**

27/27